IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRYSANTHIA LATIMORE,

        Plaintiff,

    v.

GATEWAY RETRIEVAL, LLC, et
al.,

        Defendants.

CIVIL ACTION FILE NO.

1:12-CV-00286-TWT-JFK

## FINAL REPORT AND RECOMMENDATION

Pending before the court is Plaintiff Chrysanthia Latimore's second motion [Doc. 7] for default judgment against Defendant Gateway Retrieval, LLC. Plaintiff Latimore has also filed a motion for attorney's fees. [Doc. 9]. Plaintiff Latimore filed a complaint in this court on January 27, 2012, alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and asserting state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. [Doc. 1]. On May 11, 2012, the clerk of court entered a default pursuant to Federal Rule of Civil Procedure 55(a) based on Defendant's failure to answer the complaint. [Docket Entry dated May 5, 2012].

## I.  Facts

Federal Rule of Civil Procedure 8(b)(6), which is the equivalent of former Rule 8(d), provides in pertinent part: "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6) (as amended 2010). Although Defendant was served with the summons and complaint on March 8, 2012, Defendant has yet to file an answer. [Doc. 3]. "By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually." Burlington Northern R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996) (citing former Rule 8(d)).

The facts established by the complaint and Plaintiff's affidavit attached to the motion for default judgment and the declarations attached to the motion for attorney's fees are as follows. Defendant is a Georgia corporation and is a "debt collector" as that term is defined by 15 U.S.C. § 1962a(6). [Doc. 1, ¶ 5]. In November 2009, Plaintiff obtained a loan primarily for personal, family or household purposes and provided a post-dated check to the original creditor, to be deposited at a later time. [Id. ¶¶ 7-8].

After the debt was refinanced and went into default, Defendant acquired the debt and began to collect on that debt, in particular the post-dated check. [Id. ¶¶ 9-10].

On or about June 23, 2011, Plaintiff received a call from a collector, Ms. Todd, working for Defendant, in an attempt to collect on the debt. Ms. Todd, in the conversation, stated: "Have you ever been to jail?", "Have you ever been convicted of anything before?", and "We will be turning this check over for a criminal warrant if this matter isn't resolved." [Id. ¶¶ 11-12]. After Plaintiff's request that she be sent a copy of the item being referred to was denied, Plaintiff hung up the phone. [Id. ¶¶ 13-14]. Ms. Todd immediately called Plaintiff back; Plaintiff did not answer; and Ms. Todd left a voicemail message asking Plaintiff to call to discuss a sensitive matter. [Id. ¶ 15]. In neither of these calls did Ms. Todd advise that she was debt collector and that the call was from a debt collector. [Id. ¶ 16].

As a result of these conversations, Plaintiff suffered extreme emotional distress, shock, alarm and fear, and Plaintiff sought out a criminal defense attorney. Plaintiff stated that she "was terrified that [she] was going to go to jail." [Id. ¶ 17; Latimore Affidavit ("Aff.") ¶ 3]. Because Plaintiff had never been arrested before, she experienced anxiety, became upset, tearful, nervous, frantic and very afraid. [Latimore Aff. ¶ 4].

3

Approximately three hours later on June 23, 2011, Plaintiff, due to her fear, called Ms. Todd and advised Ms. Todd how frightened she was due to the suggestion that Plaintiff could go to jail. Ms. Todd responded "that she has seen many checks come through her hands where the writer was convicted and jailed and that she did not want that to happen to PLAINTIFF and she further told PLAINTIFF that she wanted to let PLAINTIFF know what could happen to her if she did not resolve this matter." [Doc. 1 ¶¶ 18-20]. Plaintiff advised Ms. Todd that the check was a post-dated check given for a payday type loan. [Id. ¶ 21]. On July 5, 2011, Plaintiff again called Defendant, speaking with an unidentified male and requesting more time to find her documents to resolve the matter. Defendant's employee responded, "We are turning this check over to our legal department tomorrow at noon so I hope you can get your proof to us before then[.]" [Id. ¶ 22; Latimore Aff. ¶ 5]. When Plaintiff stated that she could not meet that deadline, Defendant's employee stated, "We can't just take your word for it[ . . . ] See you in court." [Doc. 1 ¶ 22; Latimore Aff. ¶ 5].

Plaintiff stated that she believed she would be prosecuted, that Defendant's employees appeared not to care if she was innocent, and that she felt powerless. [Latimore Aff. ¶ 5]. Plaintiff also stated that she was so scared and in a panic that her "stomach was in knots" and that she "felt [her] stomach ulcer beginning to burn." [Id.

4

¶ 7]. Plaintiff could not eat or sleep, and her Gastro esophageal reflux disease ("GERD") flared up. [Id. ¶ 8]. Prior to receiving the telephone calls from Defendant, Plaintiff's GERD was under control, and she had been medication and pain free "for a significant amount of time." Plaintiff believes that the stress caused by her interaction with Defendant's employees caused her GERD symptoms to reactivate. [Id. ¶¶ 8-11, 13]. Plaintiff had to visit the doctor and restart her medications and treatment, and she experienced extreme physical pain. [Id. ¶ 12]. As a result of her medical treatments, Plaintiff incurred the following medical expenses: $397.31 at the Oconee Regional Medical Center; two prescriptions for $30 each; and $160 radiology bill, for a total of $617.31. [Id. ¶¶ 14-17].

In addition to the telephone conversations with Defendant's employees, Plaintiff received four automated voicemail messages from Defendant on June 28, 2011, July 7, 2011, July 19, 2011, and August 16, 2011. The message stated: "This office has been assigned to conduct an investigation that involves you directly. You must call us at [770-XXX-4422] and speak with one of our agents immediately concerning your case. Again the number to call is [770-XXX-4422]" [sic] [Doc. 1 ¶¶ 23, 26-29]. Plaintiff contends that this message "created the impression that an official criminal division investigator of a governmental unit was conducting an investigation of

5

PLAINTIFF; that PLAINTIFF had committed a crime; and that PLAINTIFF was the target of a criminal investigation." [Id. ¶ 23].

Plaintiff seeks attorney's fees in the amount of $5,715.00. [Doc. 9]. She offers two declarations in support of that request, that of her attorney, Kirby Clements, Jr., and that of another attorney not working on this case, Justin T. Holcombe. [Id., Clements Declaration ("Dec."); Holcombe Dec.]. Mr. Clements is a 1987 graduate of Oral Roberts University and a 1990 graduate of the Emory University School of Law. [Clements Dec. ¶ 6]. He is admitted to practice in the trial and appellate courts in Georgia and the Supreme Court of Georgia, as well as in this District Court. [Id. ¶¶ 7-8]. Mr. Clements has extensive litigation experience in both criminal and civil matters, including consumer protection litigation and has lectured and taught professional classes. [Id. ¶¶ 9-15]. Mr. Clements reviewed the billing records for this case, a copy of which is attached to the motion, and verifies that the records are accurate and that the 19.05 hours that he is billing for work in this case is reasonable and necessary. [Id. ¶¶ 16-18, 21-22]. Mr. Clements hourly rate is $300.00 an hour which he states is reasonable and in keeping with the market value of the services he performed. [Id. ¶¶ 19-20, 23]. His fee request is $5,175.00. [Id. ¶ 24].

Mr. Holcombe provided a declaration in support of the fee request. He is a 2009 graduate of the Georgia State University School of Law and licensed to practice in the courts in Georgia and in this District Court. [Holcombe Dec. ¶¶ 5-8]. His practice involves litigation and representation in consumer rights cases, and he has appeared in numerous such cases in this District Court. [Id. ¶¶ 9-10]. He advises that he is familiar with Mr. Clements and that he has discussed this case with Mr. Clements and has reviewed the file and billing records for this case. [Id. ¶¶ 14-17]. Mr. Holcombe states that in his opinion the number of hours, 19.05, performed by Mr. Clements in this case is reasonable and within the range that he would anticipate should be expended to prosecute the claims brought in this case. [Id. ¶¶ 19-20]. It is also Mr. Holcombe's opinion that the hourly rate, $300, being sought by Mr. Clements is reasonable for a consumer attorney with his level of skill, experience and reputation and is in line with other awards of fees in this District. [Id. ¶¶ 20-21]. The rate is also below that established by the Laffey Matrix. [Id. ¶ 22].

Additional facts will be set forth as necessary during discussion of Plaintiff's motion for default judgment.

7

## II.     Discussion

Plaintiff Latimore's motion for entry of default judgment is brought pursuant to Federal Rule of Civil Procedure 55(b). [Doc. 7]. Although a default has been entered in this case, "[a] motion for default judgment is not granted as a matter of right. Rather, Fed. R. Civ. P. 55 vests the Court with discretion to determine whether the judgment should be entered." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). The following guidelines assist a court in exercising its discretion:

The Court must have personal and subject-matter jurisdiction over the defendant.

The presence of the Court's jurisdiction must appear on the face of the complaint.

The well-pleaded *factual* allegations of the Complaint are accepted as true, except those relating to the amount of damages.

However, the Complaint must state a cause of action.

While the well-pleaded *facts* alleged in the Complaint are deemed admitted, plaintiff's *conclusions* of law are not, and the Court may grant only the relief for which a sufficient basis is asserted (hence, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover).

Once the Court determines that a default judgment should be entered, it then determines the amount and character of the recovery that should be awarded.

Generally, damages may be awarded without a hearing if they are for a liquidated amount.

However, a plaintiff must also establish that the amount is reasonable under the circumstances.

> For damages, the Court can take evidence when necessary, or compute them from the facts of the record.
>
> Neither the plaintiff nor the defendant has a right to a jury trial on the issue of damages.

Id. (citing Patray v. Northwest Publishing, Inc., 931 F. Supp. 865, 868-70 (S.D. Ga. 1996) (emphasis in original)). In this case, the court has both personal and subject-matter jurisdiction over Defendant as established by the complaint. [Doc. 1 ¶ 1, 5]. The court also finds that Plaintiff Latimore has carried her evidentiary burden of showing that the factual allegations in the complaint "establish a prima facie liability case against" Defendant for violations of the FDCPA. Pitts, 321 F. Supp. 2d at 1357; accord GMAC Commercial Mortgage Corp. v. Maitland Hotel Associates, Ltd., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered."); McCoy v. Johnson, 176 F.R.D. 676, 679 (N.D. Ga. 1997) ("While defaulting defendants are deemed to have admitted the plaintiff's well-pleaded allegations of fact, default judgment should not be entered unless the plaintiff's claim is legally sufficient."). However, as discussed further *infra*, the court finds that

Plaintiff does not state a claim for either intentional infliction of emotional distress or for negligent infliction of emotional distress.

### a.    FDCPA

"The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir. 2010)); and see Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1357 (N.D. Ga. 2008) ("The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of a debt collector . . . ."), aff'd, 584 F.3d 1350 (11th Cir. 2009). "[A] single violation of the statute is sufficient to establish civil liability." Edwards, 586 F. Supp. 2d at 1357. Plaintiff has asserted a number of apparently viable violations of the FDCPA, including, 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g. Because the available statutory damages cannot exceed $1,000 per lawsuit, "regardless of how many times a defendant violates the FDCPA[,]" Bishop v. I.C. System, Inc., 713 F. Supp. 2d 1361, 1368 (M.D. Fla. 2010), the court will not address all of the potentially viable violations alleged in the complaint in determining whether to enter

a default judgment on the FDCPA claims.[1]  The court will focus on Plaintiff's allegations that Defendant's conduct constituted violations of §§ 1692d(6) and 1692e(11).

"In order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"  Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000) (quoting Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 470 (M.D. La. 1995)).  "While the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the purpose of the FDCPA, are lenient with its application."  Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009).  Plaintiff Latimore is able to satisfy the "collection activity" portion of the first element because the complaint's allegations and Plaintiff's affidavit establish that Defendant made multiple telephone calls to Plaintiff relating to her debt.  [Doc. 1 ¶¶ 11-15, 18-29; Latimore Dec. ¶¶ 2-3].  Plaintiff is also able to show that the collection activity arose from consumer debt.  The complaint alleges that

---

[1]The court will, however, consider those alleged additional violations in determining the amount of statutory damages to award.

the debt at issue was a personal consumer debt. [Doc. 1 ¶¶ 4, 7]. Plaintiff is, therefore, able to satisfy the first FDCPA element.

With regard to the second element, the FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendant contacted Plaintiff via the telephone, an instrument of interstate commerce. And Plaintiff's complaint alleges that Defendant's principal business purpose is the collection of debts, that is, that Defendant is a collection agency and is a "debt collector" as defined by the statute. [Doc. 1 ¶ 5]. Based on these allegations, Plaintiff is able to satisfy the second FDCPA element – that Defendant is a debt collector as defined by the FDCPA.

The final element necessary to establish a claim requires a plaintiff to show that "'the defendant has engaged in an act or omission prohibited by the FDCPA.'" Kaplan, 88 F. Supp. 2d at 1361 (citation omitted). Plaintiff Latimore brings a claim against Defendant, among others, based on §§ 1692d(6) and 1692e(11) of the FDCPA. Section 1692d provides in part: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection

12

with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (6) . . . the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Section 1692e states in part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . . .

15 U.S.C. § 1692e(11).

Plaintiff's complaint and affidavit establish that beginning in June 2011 and continuing into August 2011, Defendant placed calls to Plaintiff in an attempt to collect on a debt involving a post-dated check. [Doc. 1 ¶¶ 7-14, 23, 29]. The first series of calls involved conversations between Plaintiff and an individual identified as Ms. Todd. On June 23, 2011, when Ms. Todd initiated the first conversation with Plaintiff and then called Plaintiff back and left a voicemail message, she did not state that she was a debt collector and that the communication was from a debt collector

13

attempting to collect a debt. [Id. ¶¶ 11-16]. Defendant subsequently left a series of voicemail messages, from June 28, 2011, until August 16, 2011, for Plaintiff, stating: "This office has been assigned to conduct an investigation that involves you directly. You must call us at [770-XXX-4422] and speak with one of our agents immediately concerning your case. Again the number to call is [770-XXX-4422]" [sic] [Doc. 1 ¶¶ 23, 26-29]. Defendant did not state that the calls were from a debt collector attempting to collect a debt.

Based on these facts, the court finds that Plaintiff has established that Defendant violated §§ 1692d(6) and 1692e(11) of the FDCPA. Section 1692d(6) was violated by Defendant because phone calls were made to Plaintiff without providing "meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6); Edwards, 586 F. Supp. 2d at 1360-61 ("Accordingly, because it is undisputed that the messages failed to identify the callers as being employed by or associated with Niagara in any way, the Court finds that Defendant violated 15 U.S.C. § 1692d(6) by placing telephone calls to Plaintiff without making any meaningful disclosure of the identity of the caller."). Defendant violated § 1692e(11) when it telephoned Plaintiff and failed to disclose that the company was a debt collector and that it was "attempting to collect a debt and that any information obtained will be used for that purpose . . . ." 15 U.S.C. § 1692e(11);

AO 72A
(Rev.8/82)

Edwards, 586 F. Supp. 2d at 1361-62 (holding that "the messages at issue violated 15 U.S.C. § 1692e(11) because they were communications from a debt collector to a consumer in which the debt collector (Defendant) failed to identify the communication as coming from a debt collector"). Plaintiff Latimore is entitled to default judgment on her claim that Defendant violated the FDCPA.

For these reasons, the undersigned **RECOMMENDS** that Plaintiff Latimore's second motion [Doc. 7] for default judgment be **GRANTED** on Plaintiff's FDCPA claim against Defendant.

### b. State Law Claims

Plaintiff also seeks a default judgment on her state law claims of negligent infliction of emotional distress and intentional infliction of emotional distress.[2] "Liability for intentional infliction of emotional distress has been found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Farrell v. Time Service, Inc., 178 F. Supp. 2d 1295, 1299 (N.D. Ga. 2001) (quoting Biven Software, Inc. v. Newman, 222 Ga. App.

---

[2]The court notes that Plaintiff presented no argument in her motion for default judgment establishing that she carried her burden of presenting a prima facie case of liability on the state law claims. [Doc. 7].

112, 113-14, 473 S.E.2d 527, 529 (1996)). "'The issue of whether the allegations rise to the requisite level of outrageousness is a question of law for the court to decide.'" Id. (citation omitted). Georgia courts have held that threatening language does not rise to the level required to establish a claim for intentional infliction of emotional distress. See Cornelius v. Auto Analyst, Inc., 222 Ga. App. 759, 762, 476 S.E.2d 9, 11 (1996). In Cornelius, Defendant sent a letter to Plaintiff threatening Plaintiff with arrest if he did not pay the debt owed to Defendant. Id. Finding that the trial court did not err in granting the motion for summary judgment for the defendant, the court stated that while not approving the defendant's conduct, there was no cause of action for intentional infliction of emotional distress. Id. at 762 & n.2, 476 S.E.2d at 11-12 & n.2. See also Cook v. Covington Credit of Georgia, Inc., 290 Ga. App. 825, 828, 660 S.E.2d 855, 858 (2008) (finding no cause of action when debt collectors, after making numerous demands over the telephone, personally confronted debtor at his place of employment and used racial epithet to insult debtor and noting that the "Court has previously held that threatening language in the context of collecting a debt does not go beyond all bounds of decency and cannot be regarded as utterly intolerable in a civilized community"); accord Woods v. Sieger, Ross & Aguire, LLC, 2012 WL 1811628, at *7 (S.D. N.Y. May 18, 2012) (finding that defendant's repeated calls to

16

the plaintiff, which included a threat to contact the district attorney and to contact tax authorities if outstanding debt was not repaid, did not allege conduct meeting the exacting standards for a claim of intentional infliction of emotional distress) (citing American Credit Card Processing Corp. v. Fairchild, 810 N.Y.S.2d 874, 877, 880 (N.Y. Sup. 2006) (finding that threats that "The secret service is going to arrest you," "You will lose your house," and "They are going to bury you, John, you lying bastard," did not state a cause of action for intentional infliction of emotional distress)).

In this case, Plaintiff alleges that Defendant's employees on more than one occasion threatened her with arrest and prosecution if she did not address the issues raised by the post-dated check used in connection with a pay-day loan. [Doc. 1 ¶¶ 8-9, 21]. During the first conversation between Plaintiff and Defendant's employee, Ms. Todd stated: "Have you ever been to jail?", "Have you ever been convicted of anything before?", and "We will be turning this check over for a criminal warrant if this matter isn't resolved." [Id. ¶¶ 11-12]. And when Plaintiff subsequently called Ms. Todd and advised her how frightened Plaintiff was, Ms. Todd stated to Plaintiff "that she has seen many checks come through her hands where the writer was convicted and jailed and that she did not want that to happen to PLAINTIFF and she further told

17

PLAINTIFF that she wanted to let PLAINTIFF know what could happen to her if she did not resolve this matter." [Doc. 1 ¶¶ 18-20]. Plaintiff contends that there was no legal basis for making these threats to arrest and prosecute her.[3] [Id. ¶ 21].

As a result of these conversations, and further conversations that Plaintiff contends she believed also contained threats of criminal investigation and potential prosecution,[4] Plaintiff suffered extreme emotional distress, shock, alarm and fear. Plaintiff stated that she "was terrified that [she] was going to go to jail." [Id. ¶ 17; Latimore Affidavit ("Aff.") ¶ 3]. Because Plaintiff had never been arrested before, she experienced anxiety, became upset, tearful, nervous, frantic and very afraid. [Latimore Aff. ¶ 4]. Plaintiff also stated that she was so scared and in a panic that her "stomach was in knots" and that she "felt [her] stomach ulcer beginning to burn." [Id. ¶ 7].

_____

[3]The court will assume for the purpose of considering the motion for default judgment that Plaintiff is correct and that under the circumstances which she presented the post-dated check to the original creditor, no intent to violate state law could be proven, that is, that the recipient knowingly accepted the post-dated check with the understanding that funds were not available to cover the amount of the check on that date. See, e.g., Galbreath v. State, 193 Ga. App. 410, 387 S.E.2d 915 (1989); Bivens v. State, 153 Ga. App. 631, 266 S.E.2d 304 (1980).

[4]The court notes that the language utilized in the conversation with Defendant's employee on July 5, 2011, that the check would be turned over to the legal department the next day and that he would see Plaintiff in court, and in the voicemail messages stating that the "office has been assigned to conduct an investigation," does not contain direct or explicit threats of arrest or criminal prosecution. [Doc. 1 ¶¶ 22-23].

18

Plaintiff could not eat or sleep, and her GERD flared up. [Id. ¶ 8]. Prior to receiving the telephone calls from Defendant, Plaintiff's GERD was under control, and she had been medication and pain free "for a significant amount of time." Plaintiff believes that the stress caused by her interaction with Defendant's employees caused her GERD symptoms to reactivate. [Id. ¶¶ 8-11, 13]. Plaintiff had to visit the doctor and restart her medications and treatment, and she experienced extreme physical pain. [Id. ¶ 12].

While Plaintiff has established that she suffered severe emotional distress, the court simply does not find that the allegations in her complaint "show intentional or reckless conduct that was 'extreme and outrageous[.]'" Cornelius, 222 Ga. App. at 762, 476 S.E.2d at 11 (citation omitted). In fact, the court located only three cases in which, in connection with debt collection activity, Georgia courts have found that the plaintiff stated a cause of action for intentional infliction of emotional distress. In American Financial & Loan Corp. v. Coots, 105 Ga. App. 849, 125 S.E.2d 689 (1962), the court found that a cause of action was stated against a bill collector who terrorized the plaintiff and his family at gunpoint. In Delta Financial Co. v. Ganakas, 93 Ga. App. 297, 91 S.E.2d 383 (1956), a claim was allowed against a defendant whose agent threatened a small child, while trying to gain entry into the residence, with arrest in an attempt to repossess her parent's television set. And in Stephens v. Waits, 53 Ga. App.

19

44, 184 S.E. 781 (1936), the court allowed a cause of action to go forward when debt collectors physically intimated the plaintiffs as they were attempting to bury a family member. The conduct alleged by Plaintiff does not come close to the debt collection activity alleged in these cases.

Plaintiff also has not stated a cause of action for negligent infliction of emotional distress. Because "this state recognizes no cause of action for *negligent* infliction of emotional distress[,]" S & W Seafoods Co. v. Jacor Broadcasting of Atlanta, 194 Ga. App. 233, 237, 390 S.E.2d 228, 231 (1989) (citing Hamilton v. Powell, Goldstein, Frazer, & Murphy, 252 Ga. 149, 311 S.E.2d 818 (1984)) (emphasis in original), the only way a plaintiff who brings a negligence claim can recover for mental pain and suffering is when the emotional distress was accompanied by "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress[,]" Lee v. State Farm Mutual Ins. Co., 272 Ga. 583, 586, 533 S.E.2d 82, 85 (2000).[5] Accord Cornelius v. Bank of America, N.A., 2012 WL 4468746, at *4 (N.D.

---

[5]Based on facts not pertinent to this case, the Supreme Court did not require evidence of causal relationship between the physical injury to the plaintiff and the cause of action. The Court allowed a parent to proceed with a cause of action for negligent infliction of emotional distress for the death of a child resulting from a traffic accident in which both the parent and the child were injured. See Lee, 272 Ga. at 588,

AO 72A
(Rev.8/82)

Ga. September 27, 2012) ("there is no . . . independent tort [for negligent infliction of emotional distress] under Georgia law[,] . . . [i]nstead, Georgia adheres to the 'impact rule,' which only permits recovery for emotional distress caused by negligent conduct where plaintiff has suffered a physical injury").

Plaintiff does not allege any physical impact by Defendant or Defendant's employee's, instead only verbal threats. And Plaintiff does not allege that a physical injury occurred which then resulted in her emotional distress. Finally, her claims of mental suffering, anxiety, fear, stomach pains, and flare up of GERD symptoms are not enough to state a cause of action. See Cramer v. Bojanles' Restaurants, Inc., 2012 WL 716176, at *19 (N.D. Ga. February 8, 2012) (the plaintiffs' allegations that as a result of her employer's sexual harassment she "suffered 'excessive and uncontrollable crying, panic attacks, significant depression, hyperventilation, shortness of breath, g[ ]asping for air, pain and tightness in the chest' and 'recurring thoughts' of the incident . . . is not enough" to state a claim for negligent infliction of emotional distress).

For these reasons, the court finds that default judgment should not be entered on Plaintiff's state law claims because her claims are not legally sufficient. See McCoy, 176 F.R.D. at 679 ("While defaulting defendants are deemed to have admitted the

_____

533 S.E.2d at 86-87.

plaintiff's well-pleaded allegations of fact, default judgment should not be entered unless the plaintiff's claim is legally sufficient.").

### c. Damages on FDCPA Claim

Having determined that a default judgment is properly entered against Defendant on the FDCPA claim, the court "'will determine the amount and character of the recovery that should be awarded.'"[6] Patray, 931 F. Supp. at 869 (citation omitted). "'It is a proper exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the prevailing party is lawfully entitled to recover and then give judgment accordingly.'" Id. at 869-70 (citation omitted). "However, a plaintiff 'cannot satisfy the certainty amount simply by requesting a specific amount. [She] must also establish that the amount is reasonable under the circumstances.'" Id. at 869 (citations omitted); accord Wright v. Holifield, 2012 WL 5933032, at *2 (S.D. Ala. November 26, 2012) ("The law is clear, however, that [the defendant's] failure to appear and the clerk's entry of default do not automatically entitle [the plaintiff] to a default judgment in the requested (or any) amount."). "Damages may be awarded only if the record adequately reflects

---

[6]Plaintiff's claims for compensatory and punitive damages are based on state law claims and are foreclosed, except as discussed *infra*, by the court's finding that default judgment should not be entered on those claims.

the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Adolph Coors Co. v. Movement Against Racism & The Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (citation omitted). The court finds that in this case the complaint, affidavit, and declarations and documents attached thereto establish the necessary facts to determine damages, without the court conducting an evidentiary hearing. Wright, 2012 WL 5933032, at *3 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required.").

Fifteen U.S.C. § 1692k(a) provides, in pertinent part:

[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of – (1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . . and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Plaintiff Latimore requests the maximum amount of statutory damages available under the FDCPA, which is $1,000, and actual damages flowing

AO 72A
(Rev.8/82)

from her medical bills, $617.31, as well as attorney's fees. [Doc. 1 ¶ 54; Doc. 7 at 2-3, 6-8; Doc. 9].

"In enacting the FDCPA, Congress meant to ensure that every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." Meadows v. Franklin Collection Service, Inc., 414 Fed. Appx. 230, 233 (11th Cir. 2011) (citations and internal quotation marks omitted). And the FDCPA states: "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors–(1) . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b)(1).

As noted, Plaintiff seeks actual damages. Although the amount of actual damages is not specified in the complaint [Doc. 1 ¶ 54], in the motion for default judgment, Plaintiff limits the amount requested to the medical expenses she incurred as a result of Defendant's conduct. [Doc. 7 at 2-3]. Based on the allegations in the complaint and the statements in her affidavit, Plaintiff has sufficiently established that these medical expenses were the result of Defendant's conduct. In the June 2011 call from Ms. Todd, she stated: "Have you ever been to jail?", "Have you ever been

24

convicted of anything before?", and "We will be turning this check over for a criminal warrant if this matter isn't resolved." [Id. ¶¶ 11-12]. After Plaintiff's request that she be sent a copy of the item being referred to was denied, Plaintiff hung up the phone. [Id. ¶¶ 13-14]. Ms. Todd immediately called Plaintiff back, and when Plaintiff did not answer, Ms. Todd left a voicemail message asking Plaintiff to call to discuss a sensitive matter. [Id. ¶ 15]. Later on that date, Plaintiff called Ms. Todd and advised how frightened she was due to the suggestion that she could go to jail. Ms. Todd responded "that she has seen many checks come through her hands where the writer was convicted and jailed and that she did not want that to happen to PLAINTIFF and she further told PLAINTIFF that she wanted to let PLAINTIFF know what could happen to her if she did not resolve this matter." [Id. ¶¶ 18-20]. And on July 5, 2011, Plaintiff again called Defendant, speaking with an unidentified male and requesting more time to find her documents to resolve the matter. Defendant's employee responded, "We are turning this check over to our legal department tomorrow at noon so I hope you can get your proof to us before then[.]" [Id. ¶ 22; Latimore Aff. ¶ 5]. When Plaintiff stated that she could not meet that deadline, Defendant's employee stated, "We can't just take your word for it[ . . . ] See you in court." [Doc. 1 ¶ 22; Latimore Aff. ¶ 5]. Plaintiff also received four voice messages from Defendant during

June, July and August 2011, which stated that an investigation was being conducted involving Plaintiff and that she needed to call to discuss the matter. [Doc. 1 ¶¶ 23-29].

As a result of these contacts with Defendant, Plaintiff suffered extreme emotional distress, shock, alarm and fear. Plaintiff stated that she "was terrified that [she] was going to go to jail." [Id. ¶ 17; Latimore Aff. ¶ 3]. Because Plaintiff had never been arrested before, she experienced anxiety, became upset, tearful, nervous, frantic and very afraid. [Latimore Aff. ¶ 4]. Plaintiff also stated that she was so scared and in a panic that her "stomach was in knots" and that she "felt [her] stomach ulcer beginning to burn." [Id. ¶ 7]. Plaintiff could not eat or sleep, and her GERD flared up. [Id. ¶ 8]. Prior to receiving the telephone calls from Defendant, Plaintiff's GERD was under control, and she had been medication and pain free "for a significant amount of time." Plaintiff believes that the stress caused by her interaction with Defendant's employees caused her GERD symptoms to reactivate. [Id. ¶¶ 8-11, 13]. Plaintiff had to visit the doctor and restart her medications and treatment. [Id. ¶ 12]. Her medical expenses totaled $617.31. [Id. ¶ 16]. The court finds that these expenses were the result of Defendant's conduct.

And the court further finds, although not requested in the motion for default judgment as a consequence of the FDCPA violation, that Plaintiff's evidence, as set

forth *supra*, establishes her entitlement to actual damages under the FDCPA for emotional distress.[7] See Minnifield v. Johnson & Freedman, LLC, 448 Fed. Appx. 914, 916 (11th Cir. 2011) ("Actual damages under the FDCPA include damages for emotional distress.").  Awarding emotional distress damages pursuant to the FDCPA does not require proof of conduct establishing a state law claim of negligent or intentional infliction of emotional distress.  See McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) ("With respect to actual damages, which may include compensation for emotional distress, state law requirements that must be proven to establish negligent or intentional infliction of emotional distress are inapplicable.") (citation and internal quotation marks omitted) (emphasis deleted). And awarding such damages pursuant to the FDCPA, as the court in McGrady v.

---

[7]Defendant is not harmed by the court *sua sponte* addressing the issue of emotional distress damages because Defendant will have the opportunity to object to the court's recommendations following filing of this report and recommendation.  See Martin v. Citimortgage, 2010 WL 3418320, at **2, 6 n.8 (N.D. Ga. August 3, 2010) (citing Shrivers v. Int'l Brotherhood of Elec. Workers Local Union 349, 262 Fed. Appx. 121, 125, 127 (11th Cir. 2008) (a party has notice of a district court's intent to *sua sponte* grant summary judgment when a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment which allows for objections to that determination); United States v. Willis, 273 F.3d 592, 597 n.6 (5th Cir. 2001) (noting that two concerns of notice and an opportunity to be heard were satisfied because the magistrate judge raised the issue and allowed the party the opportunity to argue against those findings to the district court); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (same)).

27

<u>Nissan Motor Acceptance Corp.</u>, 40 F. Supp. 2d 1323, 1339 (M.D. Ala. 1998), stated, is dictated by common sense. Otherwise, "a debtor suffering mental anguish without pecuniary or physical damages would be limited to recovering a maximum amount of $1,000 pursuant to the FDCPA. The court finds this to be an entirely unsatisfactory result as the harassment suffered by a debtor at the hands of a debt collector could well cause more than $1,000 in mental anguish damages." <u>Id.</u> Although Plaintiff has pecuniary losses in the form of medical expenses, recovery of those expenses still does not account for the extent of emotional pain and suffering established by Plaintiff in her affidavit. <u>See</u> <u>McLean</u>, 595 F. Supp. 2d at 1369-70 (relying on the plaintiff's lay testimony to establish emotional distress damages).

For these reasons and based on Plaintiff's explanation of the emotional and physical distress she suffered as a result of Defendant's violation of the FDCPA, the court finds that she is entitled to be compensated in the amount of $10,000 and that the total amount of actual damages to be awarded in the default judgment is $10,617.31.

28

The court will next address the amount of statutory damages to be awarded.[8] In the present case, Defendant called Plaintiff on more than one occasion and failed to comply with multiple provisions of the FDCPA, specifically §§ 1962d(6) and 1962e(11). [Doc. 1 ¶¶ 12, 15-16, 20, 22, 23-29]. Moreover, the fact that both an automated caller from and live callers employed by Defendant failed to make the required disclosures supports a finding that Defendant's violations were intentional. In a case involving similar facts, this court held and the Eleventh Circuit affirmed that a statutory award of $1,000 was appropriate. See Edwards, 586 F. Supp. 2d at 1354, 1363, aff'd, 584 F.3d at 1354. And the fact that Defendant's conduct more than likely constituted violations of other provisions of the FDCPA, for example, the Act prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" 15 U.S.C. § 1692e, and prohibits debt collectors from engaging in other abusive, unfair, or unconscionable practices, 15 U.S.C. §§ 1692d and 1692f, further supports the award of $1,000. Defendant

---

[8]To the extent that Plaintiff may be seeking punitive damages pursuant to the FDCPA, such damages fall within the statutory damages to be awarded and are capped at $1,000. See Thomas v. Pierce, Hamilton, and Stern, Inc., 967 F. Supp. 507, 512 (N.D. Ga. 1997) ("the court [found] that punitive damages in excess of $1,000.00 are not recoverable under the [FDCPA]"); accord Anderson v. Deutsche Bank National Trust Co., 2012 WL 3756512, at *10 (N.D. Ga. August 6, 2012) (same), adopted by 2012 WL 3756435 (N.D. Ga. August 27, 2012).

29

threatened Plaintiff with arrest and potential criminal prosecution based apparently on

the post-dated check, when arguably Plaintiff's conduct would not give rise to criminal

charges. Defendant's employees also called Plaintiff on a repeated basis. [Doc. 1 ¶¶

12, 14-15, 18-23, 26-29].

Given these facts, the court **RECOMMENDS** that Plaintiff be awarded the

maximum amount of $1,000 in statutory damages.

### d. Attorney's Fees

As noted *supra*, the FDCPA also provides that because Plaintiff Latimore has

brought a "successful action" against Defendant, she is entitled to receive "the costs

of the action, together with a reasonable attorney's fee as determined by the court."

15 U.S.C. § 1692k(a)(3). Plaintiff did not present any evidence regarding any costs

she incurred. [Doc. 9].

With regard to attorney's fees, the Eleventh Circuit has held: "The starting point

in fashioning an award of attorney's fees is to multiply the number of hours reasonably

expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th

Cir. 1994).[9] This amount is referred to as the "lodestar." Id. The party seeking

---

[9]Although Loranger involved a determination of fees pursuant to 42 U.S.C. §
1988, courts have held that the "methodology to be applied to attorney fee awards
under the FDCPA is the same that is used for claims under 42 U.S.C. § 1988." Owens

AO 72A
(Rev.8/82)

attorney's fees may establish a reasonable hourly rate by offering evidence of the relevant community's prevailing market rate for similar legal services by comparable lawyers. <u>Id.</u> The amount of time that is compensable is the number of hours reasonably expended on the litigation. <u>Id.</u> at 782.

In the present case, Plaintiff Latimore submitted a motion for attorneys fees supported by the declarations of Mr. Clements, her attorney, and Mr. Holcombe, who is not otherwise involved in this litigation. [Doc. 9, Clements Dec., Holcombe Dec.]. Plaintiff seeks an award of $5,715.00 in fees, which is for 19.05 hours at an hourly rate of $300.00. [Clements Dec. ¶¶ 21, 23-24]. Mr. Clements is a 1987 graduate of Oral Roberts University and a 1990 graduate of the Emory University School of Law, and he is admitted to practice in the trial and appellate courts in Georgia and the Supreme Court of Georgia, as well as in this District Court. [<u>Id.</u> ¶¶ 6-8]. Mr. Clements has extensive litigation experience in both criminal and civil matters, including consumer protection litigation and has lectured and taught professional classes. [<u>Id.</u> ¶¶ 9-15]. Mr. Clements reviewed the billing records for this case, a copy of which is attached to the motion, and verifies that the records are accurate and that the 19.05 hours that he is billing for work in this case is reasonable and necessary. [<u>Id.</u> ¶¶ 16-18, 21-22]. Mr.

<u>v. Howe</u>, 365 F. Supp. 2d 942, 946 (N.D. Ind. 2005).

Clements hourly rate is $300.00 an hour which he states is reasonable and in keeping with the market value of the services he performed.  [Id. ¶¶ 19-20, 23].

Mr. Holcombe, who provided a declaration in support of the fee request, is a 2009 graduate of the Georgia State University School of Law and licensed to practice in the courts in Georgia and in this District Court.  [Holcombe Dec. ¶¶ 5-8].  His practice involves litigation and representation in consumer rights cases, and he has appeared in numerous such cases in this District Court.  [Id. ¶¶ 9-10].  He advises that he is familiar with Mr. Clements and that he has discussed this case with Mr. Clements and has reviewed the file and billing records for this case.  [Id. ¶¶ 14-17].  Mr. Holcombe states that in his opinion the number of hours, 19.05, performed by Mr. Clements in this case is reasonable and within the range that he would anticipate should be expended to prosecute the claims brought in this case.  [Id. ¶¶ 19-20].  It is also Mr. Holcombe's opinion that the hourly rate, $300, being sought by Mr. Clements is reasonable for a consumer attorney with his level of skill, experience and reputation and is in line with other awards of fees in this District.  [Id. ¶¶ 20-21].  The rate is also below that established by the Laffey Matrix.  [Id. ¶ 22].

In light of this evidence, the court finds that reasonable attorney's fees should be awarded to Mr. Clements in the amount of $5,715.00, which is 19.05 hours of work

at an hourly rate of $300 per hour. Thus, the undersigned **RECOMMENDS** that a total amount of $5,715.00 in attorney's fees be awarded to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3).

## III. Conclusion

For the foregoing reasons, the court **RECOMMENDS** that Plaintiff Latimore's motion [Doc. 7] for default judgment be **GRANTED** on Plaintiff's FDCPA claim and **DENIED** on Plaintiff's state law claims of intentional and negligent infliction of emotional against Defendant Gateway Retrieval, LLC, and that her motion [Doc. 9] for attorney's fees be **GRANTED**.[10]

The court further **RECOMMENDS** that a default judgment be entered on Plaintiff's FDCPA claim against Defendant as follows:

_____

[10]Defendant Ms. "Doe" Todd apparently has not been served, although the complaint, as noted, was filed on January 27, 2012. [Doc. 1]. Because Plaintiff has not taken any action to prosecute these claims against Defendant Todd for over a year, the claim alleged against this Defendant should be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute. See Williams v. Culliver, 2012 WL 1987587, at *2 (S.D. Ala. May 10, 2012) ("An action may be dismissed if the plaintiff fails to prosecute it . . . .") (citing _inter alia_ Link v. Wabash Railroad Co., 82 S. Ct. 1386, 1388-89 (1962) ("holding district courts have the power to _sua sponte_ dismiss a cause of action for failure to prosecute")). And Local Rule 41.3 provides, in pertinent part, that the court may, with or without notice to the parties, dismiss a civil case for want of prosecution if "(3) A case has been pending in this court for more than six (6) months without any substantial proceedings of record, as shown by the record docket or other manner, having been taken in the case." LR 41.3(C), N.D. Ga.

AO 72A
(Rev.8/82)

1.     Actual Damages               $10,617.31

2.     Statutory Damages        $ 1,000.00

3.     Attorney's Fees            $ 5,715.00

TOTAL                            $17,332.31

The Clerk is **DIRECTED** to serve a copy of this report and recommendation

on Defendant, at the address shown on the return of service executed [Doc. 3]:

> Gateway Retrieval LLC
> c/o Cindy Shaw, Registered Agent
> 3755 Harrison Road
> Suite 100
> Loganville, Georgia  30052

and to the principle office address for Defendant:

> Gateway Retrieval LLC
> P.O. Box 1396
> Loganville, Georgia  30052

The Clerk is further **DIRECTED** to terminate this reference.

**SO RECOMMENDED THIS** 1st day of February, 2013.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

34